UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-11250-GAO

JAMES QUATTRUCCI,
Plaintiff,

v.

MASSACHUSETTS GENERAL HOSPITAL,
Defendant.

OPINION AND ORDER
March 20, 2020

O'TOOLE, S.D.J.

The plaintiff, James Quattrucci, has brought suit against Massachusetts General Hospital ("MGH") under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act (the "ADA"), alleging sexual harassment, retaliation, and disability discrimination.[1] MGH has moved to dismiss all claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.  Factual Background

According to the allegations in the second amended complaint, Quattrucci began working in the OB/GYN department at MGH in 2008 as an administrative manager. He reported to Dr. Jonathan Tilly as well as to executive director Caryn Wilson and associate director Dr. Bo Rueda.

---

[1] Quattrucci originally filed this suit pro se against numerous defendants, including MGH. The other defendants were dismissed and Quattrucci was given leave to amend his claims as to MGH. Quattrucci subsequently filed pro se an amended complaint, which MGH moved to strike. The Court granted the motion to the extent that the amended complaint failed to comply with Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure. The Court appointed pro bono counsel to file a second amended complaint on Quattrucci's behalf. Appointed counsel subsequently filed a second amended complaint, the pleading now at issue. He has also briefed and argued Quattrucci's opposition to the present motion to dismiss.

He also worked with Dr. Dori Woods, a research associate who worked directly with Dr. Tilly. Dr. Woods "held supervisory capacity" over Quattrucci. (Second Am. Compl. ¶ 11 (dkt. no. 54).)

Quattrucci contends that he was sexually harassed based on four occasions that occurred within a week in June 2012. The incidents involved what he identifies as a sex toy. First, he alleges that on or about June 20, 2012, Dr. Woods called Quattrucci into her office and displayed the device. The next day, Dr. Woods again invited Quattrucci into her office. She displayed the object again, removed its batteries, and made a "lewd" comment regarding her and Dr. Tilly's use of the device. On or about June 25, Quattrucci again encountered the device, "this time placed under a hat belonging to Dr. Rueda." (Id. ¶ 14.) The next day, Quattrucci entered his own locked office and found it on his office chair. Dr. Tilly was the only employee who could access Quattrucci's office when it was locked. Quattrucci reported the incidents to Human Resources that same day. The complaint alleges without further elaboration that following Quattrucci's report to Human Resources, MGH made his "work environment unpleasant and made it difficult for [him] to fulfill his job duties." (Id. ¶ 19.)

Beginning on September 6, 2012, Quattrucci took leave pursuant to the Family and Medical Leave Act because of an unnamed disability "caused by the sexual harassment and retaliation which he endured." (Id. ¶ 21.) After exhausting his leave, Quattrucci requested to return to work with an accommodation based on his doctor's recommendation: that he not "report to Dr. Tilly anymore or that alternatively he be permitted to work from home two days a week so as to avoid Dr. Tilly." (Id. ¶ 23.) MGH rejected Quattrucci's requested accommodations, "instead only permitting him the opportunity to move to a less desirable off-site work location." (Id. ¶ 24.) MGH ultimately terminated Quattrucci's employment in December 2012.

## II. Discussion

### A. Hostile Work Environment Claim

Title VII prohibits "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In relevant part, the statute makes unlawful "'sex-based discrimination that creates a hostile or abusive work environment,' also known as sexual harassment." Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016) (quoting Billings v. Town of Grafton, 515 F.3d 39, 47 (1st Cir. 2008)). To prevail on a claim for sexual harassment, a plaintiff must show: (1) that he is a member of a protected class; (2) that he was subjected to unwelcome sexual harassment; (3) that the harassment was "because of" his sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment; (5) that sexually objectionable conduct was objectively and subjectively offensive; and (6) that some basis for employer liability has been established. Id. at 215–216 (quoting O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001)).

Here, Quattrucci has failed to plausibly allege that the harassment he claims to have experienced at work was discrimination "because of" his sex. Quattrucci contends that the allegations regarding Dr. Woods' conduct "permit the inference that Dr. Woods wanted to use the sex toy with [Quattrucci], a man, in the same way she used the sex toy with Dr. Tilly, also a man." (Pl.'s Opp'n to Def. Mass. Gen. Hosp.'s Mot. to Dismiss the Second Am. Compl. 4 (dkt. no. 59).) However, the complaint does not allege that Dr. Woods made any explicit or implicit proposals, nor that there was something in the incident which would have permitted an inference she would not have shown the item to a co-worker who was a woman. Moreover, there is no allegation that Dr. Woods was involved in two other occasions when Quattrucci was exposed to the device. Once, the item was placed by some person under a different colleague's hat. Another time, it was placed in Quattrucci's locked office to which only Dr. Tilly—and not Dr. Woods—had access. Finally, the four incidents within a few days of each other do not add up to harassment "sufficiently severe

3

or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment." See O'Rourke, 235 F.3d at 728.

Because Quattrucci has not plausibly alleged that he was discriminated against because of his sex or that the purported harassment was severe or pervasive, his hostile work environment claim fails to state a claim upon which relief can be granted.

B. Retaliation

Quattrucci also alleges that MGH retaliated against him for complaining about sexual harassment by creating an unpleasant work environment and refusing to allow him to return to work with the accommodations he requested. "To make a prima facie showing of retaliation, the plaintiff must show that [he] engaged in protected conduct, that [he] suffered an adverse employment action, and that a causal nexus exists between the protected activity and the adverse action." Ponte v. Steelcase Inc., 741 F.3d 310, 321 (1st Cir. 2014). As to an adverse employment action, Quattrucci only vaguely references an "unpleasant work environment" and MGH's denial of his preferred accommodations. Moreover, his allegations do not give rise to the plausible inference of a causal nexus between his Human Resources complaint and the alleged adverse employment actions. The only possible connection between the events is some temporal proximity, but the five- or six-month gap in this case without any additional supporting allegations is too attenuated to meet the plausibility standard. See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004) (noting that "[t]hree and four month periods have been held insufficient to establish a causal connection based on temporal proximity").

C. Disability Discrimination

Quattrucci appears to allege two forms of disability discrimination: traditional disability discrimination based upon his termination and failure to accommodate. To establish a claim for the former under the ADA, a plaintiff must show "(1) [he] was disabled within the meaning of the

ADA; (2) [he] was qualified to perform the essential functions of the job, either with or without reasonable accommodation; and (3) the employer took an adverse employment action against [him] because of the alleged disability." Colón-Fontánez v. Municipality of San Juan, 660 F.3d 17, 32 (1st Cir. 2011). With respect to a claim of failure to accommodate, a plaintiff must demonstrate that (1) he "is disabled within the meaning of the ADA, (2) [he] was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [the employer], despite knowing of [his] disability, did not reasonably accommodate it." E.E.O.C. v. Kohl's Dep't Stores, Inc., 774 F.3d 127, 131 (1st Cir. 2014) (quotations omitted). "Under the third element, an employee's request for accommodation sometimes creates 'a duty on the part of the employer to engage in an interactive process.'" Id. at 132 & n.5 (quoting Enica v. Principi, 544 F.3d 328, 338 (1st Cir. 2008)).

Both of Quattrucci's theories are inadequate on the facts alleged. Among other reasons, he has not adequately alleged he is disabled within the meaning of the ADA. An individual is considered disabled under the ADA if he either (1) has a physical or mental impairment which substantially limits one or more major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment. 42 U.S.C. § 12102. Quattrucci's complaint does not contain any factual detail other than his own conclusory statement that he is disabled. The complaint lacks specific allegations about any impairment, any limitation on a life activity, or any perception by MGH about such impairment. The bare recitation in the complaint fails to support a plausible inference that he is "disabled" under the ADA.

Additionally, although he faults MGH for failing to permit him to report to someone other than Dr. Tilly or work from home two out of five days a week to avoid Dr. Tilly, he acknowledges that MGH offered him an off-site work location which presumably would have permitted him to

stay away from Dr. Tilly. The ADA does not require an employer to grant an employee his preferred accommodation, only a reasonable one.

For the foregoing reasons, MGH's Motion to Dismiss the Second Amended Complaint (dkt. no. 57) is GRANTED. The action is DISMISSED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
Senior United States District Judge